**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**NORMAN C. DOUCETTE,**

    **Plaintiff,**

v.                                                                                              **Case No.  8:04-cv-1631-T-TBM**

**JO ANNE B. BARNHART,**
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**
                                                    /

**O R D E R**

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits. For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was 63 years of age at the time of his administrative hearing. He stands 6', 2" tall and weighed 155 pounds. Plaintiff has a high school education. His past relevant work was as a district sales manager and route sales driver. Plaintiff applied for disability benefits in February 2001, alleging disability as of April 30, 1993, by reason of acute asthma, shortness of breath on exertion, fatigue, and sensitivity to cold air, dust, smoke, and perfume. The Plaintiff's application was denied originally and on reconsideration. Plaintiff's date last insured for disability benefits was December 31, 1998.

The Plaintiff then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ"). In essence, Plaintiff claimed that he could no longer work at any job because of breathing problems associated with asthma and asbestosis and resulting mental and physical problems.

From 1983 to 1985, Plaintiff worked as an independent distributor for McKee Baking Company. Plaintiff testified that on a typical day, he would wake at around 3:30 in the morning and go to the warehouse to load his truck with product. He testified that he would load 150 to 200 cases of cookies and cakes, with each case weighing 15 to 25 pounds each. He then stopped at stores, took their orders, and used a dolly to unload the product from his truck to the shelf. If he had special delays, then he would spend more time in the store. As an independent distributor, he finished his route around 3:30 p.m. If he went straight home, he would be home by 4:00 p.m.; if he had to go back to the warehouse, he wouldn't go home until 5:00 p.m. The job entailed some paperwork, such as customer orders. In 1986, Plaintiff went into management for McKee Foods. In this position, his responsibility was to increase sales for the company by building new distributorships and working with existing distributors. According to Plaintiff, this job entailed the same degree of lifting and walking and was generally more physically demanding. During this time, he suffered from fatigue and shortness of breath.

In or about the fall of 1992, he had a "prednisone crash" when he overexerted himself at work and this lead to a three month leave of absence to address his physical and mental condition. Because the job had become too difficult and was "killing him," Plaintiff

quit in April 1993.  Plaintiff testified that he had considered doing less strenuous work than distribution, but he had always done this type of work and could not type or use a computer.

Plaintiff testified that in 1990 or 1991, after he choked on food at a restaurant, an x-ray revealed that he had a narrow esophagus.  He underwent three esophageal stricture dilations to open his esophagus so that he could swallow more easily.  In 1992, he was diagnosed with asbestos exposure, most likely from his work in a boiler room for four years while in the Navy in the 1960s.

Plaintiff described a relatively active daily regimen after he quit work.  He continued to wake up early.  He would sometimes go back to sleep, or he would get up and read the paper and eat breakfast.  He would often lie down and take a nap or go shopping at Wal-mart or a grocery store and then do some housework.  He did some lawn and outdoor work, but his allergy to grasses caused him to suffer asthma attacks.  He indicated that he had to avoid certain things, like perfume, diesel fumes, or any strong odors.  Cold weather also caused him difficulty.   Because of the cold weather and his allergies to certain northern trees and grasses, Plaintiff and his wife moved to Florida in 1994.  They live in a condominium, so the grass and bushes are trimmed by maintenance workers.  Since living in Florida, he has had to go to the emergency room once for an attack.  Plaintiff testified that the medications he takes do not cause him side effects.  He carries an inhaler, which brings him quick relief and lasts for about an hour.

Plaintiff described his ability to walk in terms of shopping without a problem for about 45 minutes to an hour.  He testified that he did not have trouble lifting the groceries so long as he did not overdo it.  If he went shopping in several stores, he would have to take a

nap upon returning home. Plaintiff's hobbies include caring for and showing an old car, and he has model cars. As for the delay in filing his claim, the Plaintiff indicated that his wife had a good job and he never considered applying for welfare until after his wife stopped working due to problems in her knees. See Plaintiff's testimony (R. 256-75, 282- 84).

The ALJ also took testimony from Teresa Manning, a vocational expert (hereinafter "VE"), who described Plaintiff's past work as a route salesman as medium, semiskilled work and his work as a sales manager as sedentary, skilled work, although as performed by the Plaintiff, it required up to medium exertion to perform. She further testified that skills acquired for these positions included instruction and training, financial analysis, customer service, record keeping, marketing, and merchandising. Upon an assumption of an individual who is 54 to 62 years of age with a high school education and has Plaintiff's past relevant work experience with the ability to perform medium work, i.e., lifting, carrying, pushing, and pulling 50 pounds occasionally and 25 pounds frequently; sitting, standing, and walking six to eight hours in an eight-hour day; and limited to frequent climbing, balancing, stooping, crouching, kneeling, and crawling; with no concentrated exposure to dust, fumes, gases, or other air pollutants, the VE opined that Plaintiff could perform both of his past jobs. Upon the assumption that Plaintiff could only perform at the light exertion level, i.e., lifting, carrying, pushing, and pulling 20 pounds occasionally and 10 pounds frequently; with sitting, standing, and walking six to eight hours; with climbing, balancing, stooping, crouching, kneeling, and crawling limited to occasionally and no concentrated exposure to chemicals, humidity, heat, cold extremes, dust, fumes, gases, perfumes, or other types of air pollutants, the VE testified that Plaintiff could not perform his past jobs as he testified to, but that he

could perform the district sales manager job based upon the DOT.  Upon a similar assumption, but with standing and walking limited to two hours, the VE testified that her answer would be the same.  However, upon an additional assumption that secondary to fatigue, the individual would need to rest for 30 to 45 minutes every two hours, the VE testified that there would be no semiskilled or skilled jobs that would accommodate those limitations.

In response to questions by Plaintiff's counsel, the VE agreed that there would be only "indirect" transferability of his marketing and merchandising skills in industries different from that in which he had worked.  Thus, in her view, Plaintiff would be able to cross industry lines with a "knack" for merchandising and marketing that would allow him to learn the new job.  However, his entry into the new industry would not likely be at the district sales manager level, but at a lesser job.  So, in her view, he could go into retail or the hotel industry using his acquired skills, but as a clerk or cashier and not in district manager type position. See VE's testimony (R. 275-81)

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are addressed herein as necessary.

By her decision of August 12, 2002, the ALJ determined that while Plaintiff has severe impairments related to chronic obstructive pulmonary disease with history of pulmonary hypertension, asthmatic bronchitis, asbestosis, gastroesophageal reflux, history thoracic spine sprain, resolved, and is status-post esophageal stricture dilation x 3, he nonetheless had the residual functional capacity to perform limited light and sedentary work.

Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform his past work as a district sales manager as the job was usually performed in the national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 25- 32). The Appeals Council initially granted Plaintiff's request for review based on contradictory findings by the ALJ, but indicated its intention to find that Plaintiff had the residual functional capacity to do limited light work and thus could perform work as a district sales manager as such work is done in the general economy. (R. 239- 40). Plaintiff was invited to send additional evidence and arguments, which he did. (R. 242- 51). Thereafter, the Appeals Council entered its findings and concluded that Plaintiff could perform his past work as a district sales manager and therefore was not disabled. That decision became the final decision of the Commissioner. (R. 7- 10).

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See

id. at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate that she has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The Commissioner erred in finding that the claimant had the residual functional capacity to return to his past relevant work for which the claimant failed his burden of proof at step 4 of the sequential evaluation process; and

(2) The claimant should have been found disabled at step 5 of the sequential evaluation process as the evidence is uncontroverted that the claimant does not have transferable job skills that would directly transfer to other skilled work without substantial vocational adjustment.

As noted above, the Appeals Council determined that the Plaintiff had a residual functional capacity ("RFC") which permitted him to perform a limited range of light exertional work.[1] Upon this conclusion and testimony from the VE that a person of Plaintiff's age, education and work experience with such a RFC could perform the requisites of his past work as a sales manager as that work is defined by the DOT, Plaintiff was determined to be not disabled. In reaching this conclusion, the Appeals Council decided the case at step 4 of the 5-step evaluation process dictated by the Regulations. 20 C.F.R. § 404.1520. At this step, the Plaintiff bears the burden of establishing that he can no longer perform his past relevant

---

[1] RFC is what a claimant can still do despite his physical and mental limitations. 20 C.F.R. § 404.1545.

work.[2] Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987) (citing Syrock v.. Heckler, 764 F.2d 834, 835 (11th Cir. 1985)). The review at this step involves the assessment of a claimant's residual functional capacity and requires consideration of the physical and mental demands of his former work. Nimick v. Sec'y of H.H.S., 887 F.2d 864, 866 (8th Cir. 1989). A claimant will be determined to be not disabled at this step if it is established that he can perform the demands of his specific former job or the demands of his former kind of work or occupation. Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986). A necessary consequence of a claimant's burden at this step is that he has the burden to show that certain work experience is not past relevant work. Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991).

In a novel argument, Plaintiff urges application of principles employed at step 5 of the evaluation process to reach a practical conclusion at step 4 that he truly is not capable of performing the sales manager job as generally performed because he lacks the skills necessary to make the adjustment to such work in industries with which he has little or no familiarity.[3] Thus, he urges that at step 5, a claimant such as Plaintiff would be entitled to benefits because he could not make the necessary adjustments to other similar work due to a lack of experience

---

[2] Past relevant work is work of a substantial gainful nature done within the past fifteen years which lasted long enough for the claimant to have learned to do it. 20 C.F.R. § 404.1565.

[3] Plaintiff's factual predicate for this argument is the testimony of the VE that there would only be indirect transferability of his acquired skills such as merchandising and marketing were Plaintiff to undertake to work as a sales manager in an industry with which he had little familiarity. In such an unrelated field, Plaintiff would have to start at a lower level position until he learned the product and the industry before he could assume a sales manager position.

9

and skills.[4] By the Plaintiff's argument, it is not enough at step 4 to ask if the claimant has the RFC to perform his past relevant work as generally performed unless it can fairly be found that the claimant has the skills and aptitudes necessary to perform the generic job as described in the DOT. Further, he maintains that not only has he demonstrated that he cannot do the sales manager job as he formerly did it, but he cannot do it as generally performed due to a lack of skills and without first learning about the new or different product and industry. In his view, his former work was a composite of differing job responsibilities for which there is no substantial equivalent listing in the DOT, and thus the use of the sales manager classification in this case has lead to a fallacious result.

After careful review, I conclude that the analysis called for by the Plaintiff is inappropriate in light of the clearly established standards at step 4 of the evaluation process. In any event, Plaintiff fails to prove that he does not have the RFC necessary to perform the demands of his past kind of work. At best, he demonstrates that he would likely have to learn things about a new product in a new industry, but this is something far different than showing he cannot meet the mental and physical demands of such work. Stated otherwise, the Plaintiff fails to demonstrate that the Appeals Council misapplied and applicable standard or that its conclusion is not supported by substantial evidence.

As noted above, under the regulations and applicable case law, the analysis at step 4 requires the ALJ to compare the claimant's RFC with the mental and physical requirements of the claimant's past kind of work to determine whether the claimant can still perform such

---

[4]Plaintiff's argument suggests that this was the testimony of the VE, however, the record does not support such contention.

work.[5] Ultimately, it is the Plaintiff who must prove that his RFC will not permit him to perform the demands of such past work.  Significantly, the Plaintiff here does not challenge the RFC determination of the Appeals Council.  While he urges that he cannot perform the tasks of his past kind of work were he forced to work in an industry with which he is not familiar, he fails to prove this either from the medical record or from the testimony at the hearing.  In light of the VE's testimony, he also fails to prove that his RFC was inadequate to meet the demands of his past kind of work.  While the ALJ was not required to call upon a VE at step 4, it is not improper that she did so here, and Plaintiff does not demonstrate that the VE's testimony was erroneous or the conclusions incorrect.  In my view, it is not enough to prove disability at step 4 for the Plaintiff to complain that the past kind of work would require additional learning before he could assume the responsibilities of such a job as long as he had the RFC to permit the acquiring of such knowledge.  Further, based on Plaintiff's testimony identifying the job requirements of his work in management and the other record before the ALJ and the VE, I find no error in the VE's identification and application of the sales manager classification under the DOT to the Plaintiff.  In conclusion, Plaintiff's argument calls for or proposes an analysis not called for at step 4 and he fails to demonstrate a lack of substantial evidence to support the conclusion that he does not possess the requisite skills and aptitude to do this former kind of work.

---

[5]There is no issue here whether the Plaintiff had the RFC to do his past work as he formerly did it.  He did not.

Having determined that the Appeals Council did not err in concluding at step 4 that Plaintiff was not disabled, it is unnecessary to reach Plaintiff's second claim that he is entitled to a finding of disability and an award of benefits at step 5 of the evaluation process.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 13th day of September 2005.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record